Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| FREDERICK JOSÉ CORTÉS DÍAZ<br><br>Recurrente<br><br>v.<br><br>TOCARS TOA BAJA LLC; ALEX RODRÍGUEZ, VENDEDOR<br><br>Recurrida | KLRA202400711 | *Revisión* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: SAN-2023-0017204<br><br>Sobre: Reglamento Contra Prácticas y Anuncios Engañosos |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de febrero de 2025.

Comparece Frederick José Cortés Díaz (en adelante, señor Cortés Díaz o recurrente) mediante un recurso de *revisión* para solicitar que revisemos la *Resolución* emitida y notificada el 24 de octubre de 2024, por el Departamento de Asuntos del Consumidor (en adelante, DACo).[1] Mediante la *Resolución* recurrida, el DACo declaró No Ha Lugar la querella instada por el recurrente y refirió el caso a la Unidad de Fiscalización para la acción correspondiente.

Por los fundamentos que expondremos, se *revoca* la *Resolución* recurrida.

I

El caso del título inició cuando el 27 de septiembre de 2023, el recurrente instó una *Querella* ante el DACo contra Tocars Toa Baja, LLC (en adelante, Tocars); y Alex Rodríguez, vendedor y empleado de Tocars (en adelante, señor Rodríguez o vendedor y en

---

[1] Apéndice del recurso, a las págs. 34-42.

Número Identificador

SEN2025_____

conjunto, parte recurrida).[2] Adujo que observó un anuncio en la plataforma Facebook, específicamente en la página "Alex Auto PR", perteneciente al vendedor, el señor Rodríguez. En dicho anuncio, alegadamente, se presentaba un vehículo de motor SUV Rav4 Híbrida, modelo XSE, en color plateado metálico, con capota y molduras en color "piano black" y con "roof rack" instalado.[3] Además, el señor Cortés Díaz sostuvo que, en ese anuncio publicitario, se incluían varios mensajes en texto que decían: (i) "garantía de por vida", (ii) "tanque lleno" y (iii) "asistencia en carretera".[4] Alegó que el referido anuncio tenía como título "Gran Ofertón de Liquidación" y que la unidad exhibía el precio dentro de una burbuja, el cual indicaba: "Rav4 2023 $31,555.00* Balance a Financiar".[5]

Así las cosas, con intención de adquirir la unidad, el recurrente afirmó que se comunicó con el vendedor a través de su plataforma social para obtener información sobre el pronto que debía ofrecer.[6] Sostuvo que, en respuesta a su consulta, el vendedor le informó que el depósito requerido ascendía a $3,000.00 dólares.[7] Posteriormente, el recurrente acordó con el vendedor visitar el concesionario Tocars el 26 de septiembre de 2023, para inspeccionar la unidad. Acotó que al llegar al concesionario fue atendido por el señor Luis Felipe Rivera (en adelante, señor Rivera) y solicitó ver el modelo del vehículo ilustrado en el anuncio, así como realizar una prueba de manejo, solicitud que le fue concedida. Adujo que, posteriormente, el señor Rivera lo llevó a un escritorio donde sostuvieron una conversación. En ese momento, el señor Cortés Díaz manifestó su interés en adquirir la unidad por el precio

---

[2] Apéndice del recurso, a las págs. 1-11. Véase, Expediente Administrativo Núm. SAN-2023-0017204.
[3] Apéndice del recurso, a las págs. 4-8.
[4] *Íd.*
[5] *Íd.*
[6] *Íd.*, a la pág. 10.
[7] *Íd.*

anunciado de $31,555.00 dólares, y afirmó que disponía de los $3,000.00 dólares, que el vendedor le había indicado como pronto a pagar. Fue en ese entonces cuando, según alegado por el recurrente, el señor Rivera le informó que el modelo híbrido no estaba disponible por el precio indicado en el anuncio, ya que su costo era mayor y, por tanto, no podía vendérselo por el precio de $31,555.00 dólares. Asimismo, sostuvo que el señor Rivera reconoció que el anuncio en cuestión resultaba confuso.

Por lo anterior, el recurrente alegó que dicha práctica era una engañosa y solicitó en la *Querella* que se le vendiera la unidad mostrada en el anuncio, entiéndase, la Rav4 Híbrida, modelo XSE 2023, en color plateado y negro, con los "roof racks", por el precio de $31,555.00 dólares.

En reacción, el 27 de noviembre de 2023, el señor Rodríguez presentó su *Contestación a Querella*.[8] En su escrito, se expresó en cuanto a las alegaciones del recurrente y sostuvo que su anuncio presentaba de manera clara y adecuada la información relevante sobre las unidades, asegurando que los datos ofrecidos estaban libres de ambigüedades que pudieran generar confusión en el consumidor. Arguyó que en dicho anuncio había un asterisco que indicaba "Precios son balances a financiar VER LEGALES". Tanto es así que afirmó que el anuncio incluía un enlace visible que, al accederlo, proporcionaba información específica sobre el modelo del vehículo y el monto del pronto que el cliente debía aportar. Argumentó que, el recurrente tenía conocimiento del costo de la unidad por las especificaciones que brindaba y que siempre le ofreció la información correspondiente. Es por lo anterior que, solicitó al DACo que se desestimara la *Querella* instada tras razonar que no procedía lo alegado por el recurrente.

---

[8] Apéndice del recurso, a las págs. 12-20.

Posteriormente, mediante *Notificación* del 7 de junio de 2024, el DACo citó a vista administrativa, la cual programó para el 8 de agosto de 2024.[9]

Días antes de la vista, el 2 de agosto de 2024, Tocars compareció al pleito y solicitó una producción de documentos en preparación para la vista.[10] Posteriormente, el 6 de agosto de 2024, Tocars presentó su *Contestación a Querella*.[11] En su escrito, negó, en síntesis, las alegaciones, presentó defensas afirmativas y solicitó que la *Querella* fuese desestimada por que la misma no aducía hechos que justificaran la concesión de remedio alguno en su contra.

De acuerdo con el calendario establecido, el 8 de agosto de 2024, el DACo celebró la vista administrativa. En la vista, el DACo recibió prueba testimonial y documental de las partes. De ahí, producto de la vista celebrada, el DACo emitió y notificó la *Resolución* recurrida,[12] en la cual declaró *No Ha Lugar* la Querella instada y ordenó el cierre y archivo de la misma. Empero, refirió el caso del título a la Unidad de Fiscalización para la acción correspondiente.

En la *Resolución* recurrida, el DACo consignó las siguientes trece (13) determinaciones de hechos:

1. La parte querellante se identifica como Frederick José Cortés Díaz, mayor de edad, con dirección postal: HC 4 BOX 8956, Canóvanas, PR 00729, y correo electrónico: fjcortes5@gmail.com.

2. La parte querellada se identifica como TOCARS Toa Baja LLC, corporación autorizada hacer negocios en Puerto Rico, número de registro: 440569, y dirección postal: PO Box 3143, Bayamón, PR, 00960.

3. La parte co-querellada se identifica como Alex Rodríguez Colón, mayor de edad, con dirección postal: HC 01 BOX 5598, Barranquitas, PR 00794, y correo electrónico: ar@alexautopr.com.

---

[9] Apéndice del recurso, a las págs. 21-24.
[10] *Íd.,* a las págs. 27-29.
[11] *Íd.,* a las págs. 30-33.
[12] *Íd.,* a las págs. 34-42.

4. El 23 de septiembre de 2023, la parte querellante vio un anuncio [imagen] en sus redes sociales de "Alex Auto PR" [co-querellante]. Dicho anuncio indicaba lo siguiente: Gran Ofertón de Liquidación, RAV4, 2023, $31,555,00* [balance a financiar]. Garantía de por Vida. Tanque Lleno. Asistencia en carretera. RAV4 ¿Buscando el auto de tus sueños y no lo encuentras? ¡Tenemos la solución para ti! *GRAN INVENTARIO TOYOTA ...* more

5. En otro de los anuncios de Alex Auto PR, se anunciaba lo siguiente: *¡TENGO LAS LLAVES DE TU NUEVO AUTO! GRAN INVENTARIO TOYOTA. Te ayudamos a elegir el auto correcto para ti. Trabajamos con toda la banca. Excelentes beneficios. Aprobación inmediata. Obtén orientación sin compromiso. 787-910-2777.* [https://bit.ly.LEGALESALEXAUTO](https://bit.ly.LEGALESALEXAUTO). *VER LEGALES.* Algunas unidades requieren aportación de dinero. *See less.* Luego de la información, está la imagen descrita en la determinación de hecho número 4.

6. En legales, se muestra una página web de Alex Auto, LEGALES ALEX AUTO MES DE SEPTIEMBRE DE 2023. En dicho documento surge una lista de ofertas de vehículos de motor, en lo aquí pertinente, indica: *Toyota-RAV4, 2023 - Modelo LE -Balance a financiar $31,555.00 – Cliente debe aportar $3,000.00 de pronto.*

7. Luego de ver los anuncios, el querellante asumió que la unidad del anuncio era una híbrida, ya que tenía el logo de Toyota con fondo color azul.

8. La parte querellante se contactó con el vendedor, Alex Rodríguez Colón, mediante las redes sociales [Messenger]. En esta conversación, el vendedor le indicó al querellante que, la oferta requería un pronto, por la cantidad de $3,000.00. El querellante indicó estar interesado en la unidad y solicitó la ubicación del concesionario, el vendedor, mediante la aplicación de WhatsApp, se la envió [Tocars Toyota de Toa Baja]. El querellante indicó que estaría yendo al concesionario el 26 de septiembre de 2023.

9. El día acordado, el querellante se personó a las facilidades del concesionario. El vendedor no estaba en ese momento. Lo atendió otro vendedor, Luis Felipe Rivera, al éste preguntarle al querellante en qué unidad estaba interesado, el querellante le dejó saber que en la Toyota-RAV4. Híbrida, dos colores [gris y negra], la unidad del anuncio de Alex Rodríguez.

10. La parte querellante hizo un *test drive* en una Toyota-RAV4, Híbrida [color blanco-negro]. Al culminar el *test drive,* el querellante le indicó al vendedor que deseaba la unidad, pero en color gris-negro. Una vez el vendedor buscó la unidad, se dispuso a hablar con el querellante. El querellante le indicó que deseaba la unidad [Toyota-RAV4, Híbrida [color blanco-negro], según el anuncio de Alex Rodríguez, por el precio de $31,555.00, con un pronto por la cantidad de $3,000.00. En ese momento, el vendedor le indicó que el modelo híbrido no estaba en el precio indicado en el anuncio, el modelo híbrido tenía un precio mayor.

11. Por tal razón, el querellante presentó la querella de epígrafe.

12. El anuncio no indicaba, en lugar alguno, que la unidad de la oferta era una unidad Toyota-RAV4, Híbrida.

13. El modelo de Toyota-RAV4, que se puede apreciar en el anuncio, no es el modelo LE, es un modelo híbrido, con el símbolo de Toyota con fondo color azul. Sin embargo, en legales se especifica qué modelo es el de la oferta: *Toyota-RAV4, 2023 – Modelo LE – Balance a financiar $31,555.00 - Cliente* debe aportar $3,000.00 de pronto.[13]

Por otro lado, como parte de su dictamen, el DACo concluyó que el anunció en cuestión comunicó una idea falsa, confusa o incorrecta, sobre el bien o servicio anunciado.[14] Expresó, además, que el anunció poseía la tendencia o capacidad para confundir. Por lo anterior, refirió el caso del título a la Unidad de Fiscalización para la acción correspondiente.[15]

Insatisfecho con el resultado, el 13 de noviembre de 2024, el recurrente presentó una *Moción de Reconsideración.*[16] En reacción, el 12 de diciembre de 2024, Tocars presentó su oposición a la solicitud instada por el recurrente.[17] Sin embargo, del expediente ante nuestra consideración se desprende que, una vez transcurrido el término dispuesto en ley[18] para acoger la referida *moción,* el DACo no emitió disposición alguna al respecto, lo que resultó en su rechazo de plano.

Insatisfecho aún, el 27 de diciembre de 2024, el recurrente compareció ante nos mediante un *Recurso de Revisión Administrativa* y esbozó los siguientes dos (2) señalamientos de error:

1. ERRÓ EL FORO ADMINISTRATIVO AL DECLARAR *NO HA LUGAR* LA QUERELLA A PESAR DE HABER CONCLUIDO QUE EL CONSUMIDOR FUE OBJETO DE UN ANUNCIO ENGAÑOSO POR PARTE DE UN ESTABLECIMIENTO COMERCIAL.

2. ERRÓ EL FORO ADMINISTRATIVO AL NO CONCEDER REMEDIO ALGUNO A FAVOR DEL CONSUMIDOR AUN

---

[13] Apéndice del recurso, a las págs. 36-38. Hacemos constar que se omitieron las notas al calce que el DACo incluyó en sus determinaciones de hechos mediante las cuales se hacía referencia los Exhibits I-V.
[14] Apéndice del recurso, a la pág. 40.
[15] *Íd.*
[16] *Íd.,* a las págs. 43-52.
[17] *Íd.,* a las págs. 53-57.
[18] Ley 38-2017, 3 LPRA sec. 9655.

CUANDO DETERMINÓ QUE, COMO CUESTIÓN DE DERECHO, EL ANUNCIO IMPUGNADO ERA UNO ENGAÑOSO.

Mediante *Resolución* emitida el 10 de enero de 2025, concedimos al recurrente hasta el 16 de enero de 2025, para acreditar el cumplimiento con la Regla 58 del Reglamento del Tribunal de Apelaciones,[19] así como al DACo, para presentar copia certificada del expediente administrativo, Querella Núm.: SAN-2023-0017204, en forma digital "flash drive" (USB).

Por otro lado, concedimos a la parte recurrida hasta el 27 de enero de 2025, para presentar su alegato en oposición al recurso.

El 14 de enero de 2025, compareció el recurrente para acreditar el cumplimiento con nuestra *Resolución* del 10 de enero de 2025. Por otro lado, el 16 de enero de 2025, compareció el DACo para presentar copia del expediente administrativo, según le fue ordenado. De ahí, el 27 de enero de 2025, compareció Tocars para presentar su alegato en oposición al recurso. El señor Alex Rodríguez no compareció.

Habiéndose perfeccionado el recurso ante nos, procederemos a exponer el derecho aplicable.

II

**A. Revisión Judicial**

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[20] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[21] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias

---

[19] 4 LPRA Ap. XXII-B, R. 58.
[20] *Asoc. Condómines v. Meadows Dev.,*190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[21] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).

administrativas.[22] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[23] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[24] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[25] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[26]

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[27] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[28] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las

---

[22] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.
[23] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).
[24] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[25] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA*, 149 DPR 263, 279-280 (1999).
[26] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24, 34 (1996).
[27] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[28] *Íd.*

conclusiones e interpretaciones de los organismos administrativos especializados.[29]

Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[30] Entiéndase que, aunque los tribunales están llamados a conceder deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[31]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[32] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[33] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor

---

[29] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[30] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. A.R.Pe.*, supra.

[31] *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743, 754 (2024).

[32] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

[33] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).

de la evidencia impugnada, el Tribunal respetará las no sustituirá el criterio de la agencia por el suyo.[34]

**B. Las Determinaciones de Hechos y Conclusiones de Derecho en las Resoluciones de una Agencia Administrativa**

Sabido es que la revisión judicial de las adjudicaciones administrativas va tanto sobre la esfera de los hechos como la del derecho.[35] A esos efectos, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG) dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo".[36] Mientras que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.[37] Entiéndase, que las determinaciones de hecho deben avalarse siempre y cuando estén sostenidas por evidencia sustancial que surja de la totalidad del expediente.[38] El anterior régimen normativo se fundamenta en el principio de razonabilidad, mediante el cual se determina si la actuación de la agencia es arbitraria, ilegal o irrazonable o, incluso, supone un abuso de discreción.[39]

En cuanto a la evidencia sustancial, esta se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[40] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[41] Por otra parte, la norma de prueba sustancial se sostiene en la premisa de

---

[34] *Otero v. Toyota*, 163 DPR 716, 728 (2005).
[35] *W.M.M., P.F.M. et al. v. Colegio et al.*, 211 DPR 871, 904 (2023).
[36] Ley 38-2017, 3 LPRA sec. 9675.
[37] *Íd.*
[38] *Hernández Feliciano v. Municipio de Quebradillas*; 211 DPR 99, 115 (2023).
[39] *Otero Rivera v. Bella Retail Group, Inc. y otros,* 2024 TSPR 70, 213 DPR __ (2024).
[40] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota,* supra, a la pág. 728.
[41] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).

que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[42] Es por eso, que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[43]

Ahora bien, las conclusiones de derecho son revisables en todos sus aspectos.[44] En esta tarea, los tribunales están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[45] Así pues, si el fundamento de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable en toda su extensión.[46] Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[47] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[48]

### C. Ley Orgánica del DACo y Reglamento 9158

El Departamento de Asuntos al Consumidor (DACo) es la agencia facultada, en virtud de la Ley Núm. 5 del 23 de abril de 1973, conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor* (Ley Núm. 5), para vindicar los derechos del consumidor.[49] Además, la referida agencia tiene una estructura de

---

[42] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.
[43] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[44] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[45] *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[46] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[47] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).
[48] *Cruz v. Administración*, 164 DPR 341, 357 (2005).
[49] *Ortiz Rolón v. Armando Soler Auto Sales,* Inc., 202 DPR 689, 696 (2019); *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 563 (2014); Exposición de Motivos de la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, 3 LPRA sec. 341 *et seq.*

adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder remedios pertinentes conforme a derecho.[50] Particularmente, en su Artículo 6, la aludida Ley Núm. 5 establece los poderes y facultades del Secretario del DACo, entre los que se destacan:

> [. . .].
>
> (c) Atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía.
>
> [. . .].
>
> (d) Poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a Derecho. Disponiéndose que las facultades conferidas en este inciso podrá delegarlas el Secretario en aquel funcionario que él entienda cualificado para ejercer dichas funciones. [. . .].
>
> [. . .].
>
> (i) Interponer **cualesquiera remedios** legales que fueran necesarios para hacer efectivos los propósitos de este capítulo y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento.
>
> [. . .].
>
> (j) **Reglamentar y fiscalizar los anuncios y las prácticas engañosas** en el comercio, incluyendo la facultad de fiscalizar los reclamos sobre la calidad y demás cualidades de los productos y servicios, realizados a través de los distintos medios de comunicación, así como requerir de los anunciantes evidencia de la veracidad de los reclamos realizados.
>
> [. . .]. [51]

Conviene puntualizar que, la referencia a "cualesquiera remedios" significa que el DACo posee amplios poderes para dictar las acciones correctivas que sean necesarias para cumplir con el mandato de su ley habilitadora, es decir, para proteger los derechos de los consumidores.[52]

---

[50] *Ortiz Rolón v. Armando Soler Auto Sales*, Inc., supra, a la pág. 696.
[51] Ley Núm. 5, *supra,* 3 LPRA sec. 341e. (Énfasis nuestro).
[52] *Suárez Figueroa v. Sabanera Real, Inc.,* 173 DPR 694, 705 (2008).

En consecuencia de lo antes mencionado, el DACo aprobó el Reglamento Núm. 9158 sobre Prácticas Comerciales.[53] Este Reglamento tiene el propósito de agrupar y actualizar todas las medidas que el DACo ha adoptado para regular ciertas prácticas comerciales en Puerto Rico, con el fin de brindar seguridad y confianza a los consumidores.[54] A esos efectos, las disposiciones de este Reglamento aplicarán a toda persona natural o jurídica que se dedique, de forma permanente o incidental, por sí misma o mediante otra, o como intermediario, a ofrecer bienes o servicios a los consumidores en la jurisdicción del Gobierno de Puerto Rico.[55] Ahora bien, este Reglamento deberá interpretarse liberalmente en favor del consumidor.[56]

El Reglamento Núm. 9158 define un anuncio como "cualquier manifestación oral, escrita, gráfica, pictórica o de cualquier otra forma presentada, hecho con el propósito de ofrecer, describir o de cualquier otra forma presentar un producto o servicio, o algún aspecto de éste".[57] A su vez, cataloga un anuncio engañoso como:

> [C]ualquier anuncio que constituya o tienda a constituir fraude, engaño o comunique o tienda a comunicar una idea falsa, confusa o incorrecta, sobre el bien o servicio anunciado. También se considera engañoso cualquier anuncio que omita datos relevantes del producto, bien o servicio, limitando o privando al consumidor de tomar decisiones informadas y conscientes.[58]

Además de dichas definiciones, el Capítulo II del aludido Reglamento establece las disposiciones relativas a prácticas y anuncios engañosos. Ello, con el propósito de proveer directrices claras para que los comerciantes cumplan con la normativa y eviten incurrir en este tipo de conductas.[59] En consonancia con lo anterior,

---

[53] Reglamento de Prácticas Comerciales, Reglamento Núm. 9158 del 6 de febrero de 2020.
[54] *Íd.,* R. 2.
[55] *Íd.,* R. 4.
[56] *Íd.,* R. 3.
[57] *Íd.,* R. 5 (a).
[58] *Íd.,* R. 5 (b).
[59] Reglamento Núm. 9158, *supra.,* R. 11.

la Regla 14 prohíbe expresamente las prácticas y anuncios engañosos. En lo pertinente, el término práctica engañosa implica:

> Representar o expresar un hecho o una oferta si tal declaración es engañosa o falsa, o posee la tendencia o capacidad para confundir, o si no se tiene la información suficiente para sustentarla, o se ocultare un dato relevante. Ello incluye hacer aseveraciones generales que, por su falta de especificidad, no pueden sustentarse.[60]

Dentro de este marco, el referido Reglamento dispone que toda representación visual que se utilice en un anuncio deberá corresponder con las características reales del bien o servicio.[61]

Por su parte, la Regla 86 del Reglamento Núm. 9158, regula lo concerniente a las sanciones y penalidades que se podrán imponer ante la infracción o incumplimiento de las disposiciones del reglamento. La referida regla establece que ante cualquier infracción o incumplimiento con las disposiciones del Reglamento Núm. 9158, el secretario podrá emitir avisos, órdenes de hacer o no hacer, cesar y desistir.[62] También, podrá imponer y cobrar multas hasta el máximo establecido en la Ley Núm. 5.[63] A su vez, la referida regla dispone que la imposición de penalidades por el departamento no privará a los consumidores del derecho a solicitar daños bajo otros reglamentos o leyes.[64]

### III

Este Tribunal revisor tiene ante su consideración un recurso apelativo mediante el cual el recurrente nos invita a concluir que el DACo incidió al declarar *No Ha Lugar* la *Querella* incoada. En síntesis, los dos (2) señalamientos de error planteados en el presente caso versan sobre la inconformidad del señor Cortés Díaz con lo resuelto por el DACo cuando dispuso no concederle remedio alguno, aun cuando la referida agencia concluyó que este fue objeto de un

---

[60] Reglamento Núm. 9158, *supra.,* R. 14 (b)(2).
[61] *Íd.*, R. 17 (a).
[62] *Íd.,* R. 86 (a).
[63] *Íd.*; Ley Núm. 5, *supra*, 3 LPRA sec. 341q.
[64] Reglamento Núm. 9158, *supra,* R. 86 (d).

anuncio engañoso por parte del concesionario y que, como cuestión de derecho, el anuncio era uno engañoso. Luego de examinar el expediente en su totalidad y tras entender que los errores esgrimidos se relacionan estrechamente, procederemos a discutirlos conjuntamente.

Como es sabido, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[65] El Tribunal Supremo ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[66] Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[67] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[68]

Tras evaluar la totalidad de los autos ante nuestra consideración, incluyendo el expediente administrativo Núm. SAN-2023-0017204, nos es forzoso concluir que las determinaciones de hecho esbozadas por la agencia recurrida, así como las conclusiones

---

[65] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[66] *Íd.*
[67] *The Sembler Co. v. Mun. de Carolina,* supra, a la pág. 822, citando a *Empresas Ferrer v. A.R.Pe.*, supra.
[68] *Batista, Nobbe v. Jta. Directores*, supra, a la pág. 217, citando a *Asoc. Fcias v. Caribe Specialty et al. II*, supra, a la pág. 940; *Mun. de. San Juan v. JCA*, supra, a las págs. 279-280.

de derecho en las que fundamentó su decisión, son inconsistentes con la parte dispositiva de la *Resolución* que nos ocupa. Es decir, el DACo incidió al no conceder un remedio apropiado al señor Cortés Díaz, aun cuando indubitadamente concluyó que el anuncio en cuestión era engañoso. En consecuencia, justipreciamos que los errores esgrimidos por el recurrente fueron cometidos. Veamos.

Según reseñamos anteriormente, allá para el 27 de septiembre de 2023, el recurrente instó una *Querella* ante el DACo contra la parte recurrida sobre anuncio engañoso.[69] Luego de varios incidentes procesales, el 8 de agosto de 2024, se celebró la vista administrativa, en la cual la agencia recurrida recibió prueba testifical y documental de las partes. Posteriormente, mediante *Resolución* emitida y notificada el 24 de octubre de 2024, el DACo consignó trece (13) determinaciones de hechos, de las cuales resaltamos las siguientes:

[. . .].

7. Luego de ver los anuncios, el querellante asumió que la unidad del anuncio era una hibrida, ya que esta tenía el logo de Toyota con fondo color azul.

8. La parte querellante se contactó con el vendedor, Alex Rodríguez Colón, mediante las redes sociales [Messenger]. En esta conversación, el vendedor le indicó al querellante que, la oferta requería un pronto, por la cantidad de $3,000.00. El querellante indicó estar interesado en la unidad y solicitó la ubicación del concesionario, el vendedor, mediante la aplicación de WhatsApp, se la envió [Tocars Toyota de Toa Baja]. El querellante indicó que estaría yendo al concesionario el 26 de septiembre de 2023.

[. . .].

10. La parte querellante hizo un test drive en una Toyota-RAV4, Híbrida [color blanco-negro]. Al culminar el test drive, el querellante le indicó al vendedor que deseaba la unidad, pero en color gris-negro. Una vez el vendedor buscó la unidad, se dispuso a hablar con el querellante. El querellante le indicó que deseaba la unidad [Toyota-RAV4, Híbrida [color blanco-negro], según el anuncio de Alex Rodríguez, por el precio de $31,555.00, con un pronto por la cantidad de $3,000.00. En ese momento, el vendedor le indicó que el modelo híbrido no estaba en el precio indicado en el anuncio, el modelo híbrido tenía un precio mayor.

---

[69] Apéndice del recurso, a las págs. 1-11. Véase, Expediente Administrativo Núm. SAN-2023-0017204.

[. . .].

12. El anuncio no indicaba, en lugar alguno, que la unidad de la oferta era una unidad Toyota-RAV4, Híbrida.

13. El modelo de Toyota-RAV4, que se puede apreciar en el anuncio, no es el modelo LE, es un modelo híbrido, con el símbolo de Toyota con fondo color azul. Sin embargo, en legales se especifica qué modelo es el de la oferta: *Toyota-RAV4, 2023 – Modelo LE – Balance a financiar $31,555.00 - Cliente* debe aportar $3,000.00 de pronto.[70]

En consonancia con las determinaciones de hechos, la agencia recurrida formuló sus conclusiones de derecho. Concluyó que, conforme a las definiciones establecidas en la Regla 5 del Reglamento Núm. 9158,[71] el anuncio en cuestión comunicó una idea falsa, confusa o incorrecta, sobre el bien o servicio anunciado.[72] Expresó, además, que el anuncio poseía la tendencia o capacidad para confundir al consumidor. Debido a lo anterior, el DACo concluyó que la práctica llevada a cabo por la parte recurrida contravenía lo dispuesto en la Regla 14 del Reglamento Núm. 9158, el cual se prohíbe expresamente las prácticas y anuncios engañosos.[73] No obstante lo anterior, el DACo declaró *No Ha Lugar* la *Querella* instada, y ordenó el cierre y archivo de esta, empero refirió el caso a la unidad de fiscalización "para la acción correspondiente".

Según reseñamos en nuestra previa exposición doctrinal, el DACo es la agencia facultada, en virtud de la Ley Núm. 5, para vindicar los derechos del consumidor.[74] Además, enfatizamos que la agencia recurrida posee amplios poderes para dictar las acciones correctivas que sean necesarias para cumplir con el mandato de su ley habilitadora, es decir, para proteger y hacer valer los derechos de los consumidores.[75] A pesar de lo anterior, y sin el ánimo de

---

[70] Apéndice del recurso, a las págs. 36-38.
[71] Reglamento Núm. 9158, *supra,* R. 5 (b).
[72] Apéndice del recurso, a la pág. 40.
[73] Reglamento Núm. 9158*, supra,* R. 14 (a).
[74] *Ortiz Rolón v. Armando Soler Auto Sales,* Inc., supra, a la pág. 696; *Ayala Hernández v. Consejo Titulares,* supra, a la pág. 563; Exposición de Motivos, Ley Núm. 5, *supra.*
[75] *Suarez Figueroa v. Sabanera Real, Inc.,* supra, a la pág. 705.

resultar reiterativos, la referida agencia dejó desprovisto al consumidor al cual está llamado a proteger, al no otorgarle remedio alguno al señor Cortés Díaz. Ello, pese a que concluyó que la práctica llevada a cabo por la parte recurrida contravenía lo dispuesto en la Regla 14 del Reglamento Núm. 9158,[76] y que refirió el caso a la unidad de fiscalización para que tomara la acción correspondiente. A esos efectos, nos es forzoso concluir que la determinación del DACo, mediante la cual declaró *No Ha Lugar* la Querella, no puede sostenerse. Es de ver que, cuando la interpretación que la agencia hace del estatuto produce resultados inconsistentes o contrarios al propósito de la ley, su criterio administrativo no puede prevalecer.[77] Así pues, según adelantamos, este Panel ha llegado a la determinación de que los errores esgrimidos por el recurrente fueron cometidos. En consecuencia, procede revocar la *Resolución* recurrida.

IV

Por los fundamentos que anteceden, revocamos la *Resolución* emitida y notificada el 24 de octubre de 2024, y, en consecuencia, devolvemos el caso a la agencia recurrida para que le otorguen un remedio al señor Cortés Díaz, conforme a las facultades establecidas en la Regla 86 del Reglamento Núm. 9158.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[76] Reglamento Núm. 9158*, supra,* R. 14 (a).
[77] *Associated Insurance Agencies, Inc., v. Comisionado de Seguros de P.R.*, 144 DPR 425, 436 (1997).